JOHNSON ET AL. *v.* BOARD OF SUPERVISORS OF YAZOO COUNTY
ET AL.

[74 South. 321, Division B.]

1. APPEAL AND ERROR. *Review of findings. Conflicting evidence.*

The findings of a chancellor upon conflicting evidence will not be disturbed on appeal where it cannot be said that such findings are manifestly wrong.

2. COUNTIES. *Highway construction bonds. Amount of. Power of board of supervisors.*

The board of supervisors, under its plenary powers and jurisdiction over roads, may order the issuance of highway construction bonds in any sum within the limits of the statutory amount (Laws 1914, chapter 176), although the electors may ask for the maximum amount to be issued.

3. COUNTIES. *Highway construction bonds. Qualification of election commissioners.*

In an election under Laws 1914, chapter 176, to authorize the board of supervisors to issue highway construction bonds, the fact that one of the election commissioners appointed to hold the election was not a free-holder would not invalidate the election, if the same was conducted fairly, and every qualified elector was given the opportunity to record his approval or disapproval of the proposed bond issue.

4. COUNTIES. *Highway bonds. Validity of proceedings to issue.*
   Under the facts of this case the court held that taking the record as a whole, the road district was established, the election held the bonds authorized, and the bonds issued strictly in accordance with the statute Laws 1914, chapter 176,

5. COUNTIES. *Proceedings to issue highway bonds. Statute. Construction.*
   The statute authorizing the issuance of bonds is the yard stick by which the legality of their issuance is measured.

6. COUNTIES. *Highway construction bonds. Order authorizing election. Conclusiveness.*
   Where the order of the board of supervisors ordering the issuance of highway construction bonds, shows the jurisdictional facts on its face, expressly reciting that twenty per cent. of the qualified electors had petitioned for the board to adopt the law, its judgment has all the effect of a valid judgment of a court of general jurisdiction, and can only be questioned by a direct proceeding by appeal or *certiorari* to the circuit court as that court has supervisory jurisdiction of all inferior tribunals, but the chancery court has no such jurisdiction and when the records show jurisdiction in the board of supervisors to pass an order, chancery cannot question the validity of the proceedings.

7. COUNTIES. *Chancery clerk's office.*
   An office which though not physically attached to the court house yet was in the court house yard and only a few feet from the court house, and in which the chancery clerk kept the records of the county and did most of the clerk's work and kept the minutes of the board of supervisors, was legally the chancery clerks office within the meaning of the statute.

APPEAL from the chancery court of Yazoo county.
HON. O. B. TAYLOR, Chancellor.

Bill for injunction by Clint Johnson and others against the Board of Supervisors of Yazoo County and others to prevent the issuance aand sale of highway construction bonds. From a decree for defendants, complainants appeal.

The facts are fully stated in the opinion of the court.

*M. B. Montgomery,* for appellant.

The course of judicial decisions holds the board of supervisors to the strictest limitations of their powers.

*Jefferson County* v. *Grafton,* 74 Miss. 435, 21 So. 247.

The proceedings for the issuance of bonds is special in its character, and the board of supervisors can exercise no powers therein, other than those conferred by the statute creating it. *Loomis* v. *Bailey,* 45 Iowa, 400; *Herrick* v. *Carpenter,* 6 N. W. 247; *Beamon* v. *Leake County,* 42 Miss. 237.

But, aside from the fact that the board of supervisors, as a general proposition, has no power other than that conferred on it by the constitution or by statute, chapter 176, of the Laws of Mississippi of 1914, expressly limits the power of the board by providing that: "The board of supervisors are hereby authorized and empowered to construct highways and for that purpose are authorized to issue and sell bonds in the manner herein provided.

Section 170 of the Constitution, provides that: The board of supervisors shall have full jurisdiction over roads, ferries and bridges, to be exercised in accordance with such regulations as the legislature may prescribe. Chapter 176 of the Laws of Mississippi of 1914, prescribes, how the power of the board shall be exercised, and provides further that the board shall act "In the manner provided" in said act. Therefore, it is quite apparent that the board, when proceeding under chapter 176, has no more authority, than is expressly provided in chapter 176, and must proceed according to it, or not at all.

Now how does section 2 of chapter 176 of the Laws of 1914, say that the power of the board shall be exercised. It says, "that upon presentation to the board of supervisors of any county of a petition containing the names of twenty per cent. of the qualified electors of any one or more supervisors' districts asking that such district be permitted to come under the provisions of this act, it shall be the duty of the board of supervisors to publish notices of its proposal to issue the bonds, etc." So the act in question expressly provides that the board shall pass no order

until the petition, containing the names of twenty per cent. of the qualified electors of the proposed district, be filed. The law limits the power of the board to act, by stating, when the board shall begin to act, and, since the board must act ''in the manner provided'' by the act, then the ''when'' it can begin to act does not come into existence, until the petitions containing twenty per cent. of the qualified electors have been filed.

Now whom does the act say shall determine whether or not the petition contains twenty per cent. of the qualified electors of the district? Does it give the board of supervisors power of jurisdiction to determine whether the petition contains the proper number of names or not, or whether the persons, whose names are on the petition, are qualified electors or not? No! It gives the board of supervisors no power to pass on the sufficiency of the petitions. It can only receive it, and act or not act, in accordance with its sufficiency or insufficiency. They can guarantee its sufficiency to no one, as they must act ''in the manner provided'' and they are not provided with power, jurisdiction or authority to determine the sufficiency of the petition to say that the board has the power of jurisdiction to determine the sufficiency of the petition.

This would be flying right into the very teeth of the statute and openly defying it, for it expressly provides that when petitions containing the names of twenty per cent of the electors have been filed, ''it shall be the duty of such board to publish notice of its proposal to issue the bonds.'' Under the statute their first act must be to publish notices and to make the passing on the petitions their first act, we would have to amend the statute. And so, to my mind, it is absolutely clear, that the board has no power or jurisdiction to pass on the sufficiency of the petitions, but can only receive them and act or not act accordingly, when the ''when'' they can act comes into existence, ''in the manner provided'' had actually come into existence. ''But it still remains that there must be

authority, vested in the officers by law, as to each necessary fact, whether enumerated or non-enumerated, to ascertain and determine its existence and to guarantee to those dealing with them the truth and conclusiveness of their admissions. In such a case the meaning of the law, granting power to issue bonds, is, that they may be issued not upon the existence of certain facts, to be ascertained and determined whenever disputed, but upon the ascertainment and determination of their existence, by the officers or body designated by law to issue the bonds upon such a contingency. So if the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, then the true meaning of the law would be, that the authority to act at all depended upon the actual objective existence of the requisite fact and not upon its ascertainment and determination by anyone; and the consequences would necessarily follow, that all persons claiming under the exercise of such a power might be put to proof of the fact made a condition of its lawfulness, notwithstanding any recitals in the instrument. *Dixon County* v. *Field,* 11 U. S. 83, 4 S. Ct. 315, 28 L. Ed. 360.

"It is said that as the presentation of the petition vested the board of supervisors with jurisdiction to call an election, this necessarily carried with it the power to determine how the election resulted; that if it had jurisdiction to determine that removal did not carry, it had equal power and right to determine that removal did carry, and being vested with the power to decide, its decision must stand until reversed on direct appeal. But the premises are unsound and the deduction necessarily erroneous. The power of the board to order a removal of the seat of justice did not depend on the recitation in its order that two-thirds of the electors voted for removal, but upon the actual existence of the concrete fact. If such number did not vote for removal, the board had no authority to make any order for the reason that the

power by which the location of a county site can be changed cannot be set in motion except by the positive action of the voters." *Simpson County* v. *Buckley,* 85 Miss. 713. So in the case at bar, the authority of the board to act did not depend on its finding that the petitions contained the requisite twenty per cent. and unless the petitions did contain the requisite twenty per cent. their recitals in their judgment do not aid them, for the "when the board may begin to act" was not *in esse,* the supposed deceased was not dead, and the power by which alone a road district may be created under said act, cannot be set in motion except by the positive action of the voters, and the judgment may be attacked in any proceeding.

The petitions filed with the board not being sufficient, jurisdiction of the subject-matter has never yet attached to the board. Their judgments are all void, and are of no more effect than if I, myself, had passed such orders and entered them in my cash book in my office. "A judgment, which is void for want of jurisdiction over the person or thing, may be attacked collaterally." *Campbell* v. *Brown,* 6 Howard, 106; *Hemphill* v. *Hemphill,* 34 Miss. 68; *Theobald* v. *Deslonde,* 93 Miss. 712; *Ames* v. *Williams, Supra.*

A void judgment may be even set aside at a subsequent term, on motion in the court that rendered it. *Leathers* v. *Howie & Co.,* 108 Miss. 1. The order giving the notice was also void, and the notice, no notice, because the board didn't have the jurisdiction to proceed. The "when" had not come into existence, and the supposed deceased was not dead.

There is another question, involved in this case, that is of vital importance. Complainants, in the lower court, amended their bill there, so as to allege that all of the judgments and proceedings had and done by the board of supervisors of Yazoo county, relative to the issuance of read bonds of supervisors, district No. One of Yazoo county, Mississippi, were had while the board was sitting

in the court house, in what is known as the "board of supervisors' room," that the chancery clerk's office is in a building separate and apart from the court house. This amendment was not traversed in the answer of defendants and is therefore admitted.

Now, chapter 242 of the Laws of Mississippi of 1916, reads as follows: "The board of supervisors shall hold regular meetings at the court house in the chancery clerk's office, in counties where the chancery clerk's office is in a building separate from the court house, except in counties having two court districts." Chapter 234 of the Laws of 1914, which it amended, reads as follows: "The board of supervisors shall hold regular meetings at the court house in the chancery clerk's office."

Now, inasmuch as the Chancery Clerk's office, in Yazoo County is in a building separate and apart from the court house, it is not necessary for us, in this action to look after the welfare of counties, where the chancery clerk's office is in the court house, and it is therefore not necessary for us to construe into the statute or legislate into the statute a place of meeting for boards in the counties where the chancery clerk's office is in the court house, as that has nothing to do with this action. But we must take the statute to mean what it says, and if we can construe the act as sensible on its face, then there is no cause or authority for judicial construction.

What do the words "at the court house" mean? All the authorities agree that we must construe the statute according to its context. "Primarily, the word 'at' expresses the relation of presence, nearness in place, it is less definite than in or on; at the house may mean in or near the house." Webster's dictionary. So, this statute prescribes that the board shall meet in the proximity of the court house, in the chancery clerk's office. There is no other possible meaning to the act, and it either means this, or nothing, and it is a fundamental rule of law, that statutes must be construed so as to avoid absurdity.

Now it is true, that, under this act, there is no provision for the meeting place of boards in counties where the chancery clerk's office is in a building separate and apart from the court house, but this is a mistake of the legislature. Their's is the fault, and to them lies the duty of correcting it. The courts have no legislative power and to provide a place for the meeting of boards in those counties under the guise of construction, would be to legislate and not judicially construe.

*R. R. Norquist,* for appellees.

Where a party had an adequate remedy by appeal, and, through his own negligence this remedy is lost, he cannot obtain equitable relief by injunction. This is equally true whether the party has neglected altogether to take an appeal, or has prosecuted a defective or insufficient appeal. 16 Am. & Eng. Enc. of Law, pp. 377-378, and cases there cited.

Complainant seeking injunction must show that he has exercised strict diligence and has availed of every remedy otherwise afforded by statute. *Brooks* v. *Shelton,* 47 Miss. 243. Rights already lost cannot be reached by injunction. *McDaniel* v. *Hurt,* 92 Miss. 197.

Our constitution gives boards of supervisors "full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe." The legislature may regulate their actions with reference to roads, but cannot take from boards of supervisors full jurisdiction over the subject-matter. So, it would appear that, in matters of roads, ferries and bridges, boards of supervisors are not courts of special and limited jurisdiction. But, conceding that they are, if the jurisdictional facts appear affirmatively in the judgment of a board of supervisors, such judgment is entitled to the same presumption of correctness as attaches to courts of general jurisdiction.

*Board* v. *Buckley*, 85 Miss. 729; *Hinton* v. *Perry County*, 84 Miss. 436, 36 So. 565.

The facts here are, and are conceded by appellants to be, that, (1) this is a collateral attack, and (2) all jurisdictional and other necessary facts are affirmatively set out in the orders and judgments of the board of supervisors. That this is a collateral attack, is expressly decided by *Hinton* v. *Perry County, supra.*

This being a collateral attack, and the orders of the board showing affirmatively the jurisdictional facts to exist, such orders are conclusively true. They can be attacked only by direct appeal. *Hinton* v. *Perry County, supra; Lemon* v. *Peyton,* 64 Miss. 161; *State ex rel., Little* v. *Langlie,* 32 L. R. A. 723; *Canton* v. *Cooper,* 39 Miss. 784; *Ferguson* v. *Board,* 14 So. 83; see also *Cason* v. *Cason,* 31 Miss. 587; *Scott* v. *Porter,* 44 Miss. 364; *Wright, et al.* v. *Edwards Hotel & City Ry. Co.,* 58 So. 332.

"Judgment imports verity; it is conclusive in its character and admits of no question. Let it be ever so irregular, its imperfections cannot be attacked collaterally." *Vicksburg Gro. Co.* v. *Brennan,* 20 So. 845.

A judgment of the probate court is presumed correct and in the absence of a statement of the evidence in the record, if it appear that the fact in question (though a jurisdictional one) was adjudicated upon evidence deemed sufficient by the court, that adjudication cannot be collaterally impeached. *Polluck* v. *Buie,* 43 Miss. 140.

A final decree of a probate court, upon matters within its jurisdiction, unappealed from and unreversed, is conclusive and is not subject to attack in a collateral proceeding. *Harvey* v. *Miles,* 1 Miss. Dec. 135. See "Opposition to petition," 7 Am. & Eng. Enc. of Law, 1032.

"The authorities hold that the decision of the board of county commissioners as to the sufficiency of a petition for removal of a county seat is conclusive until set aside in some method provided by law for a direct review, and

cannot be collaterally attacked.'' 7 Am. & Eng. Enc. of law, 1032.

''After the petition filed and notice published all persons in the district were parties to the proceeding, and are concluded by the proceeding of the board to which they did not object.'' *Thomas* v. *Board,* 53 So. 592, which was a bond case under chapter 149, Laws 1910, of which the statute in the case at bar is an amendment.

''So in the case at bar, appellants, not having appealed from the judgment and orders of the board relative to the original petitions, 'They are concluded.' '' See, also, *Sullivan* v. *Board,* 58 Miss. at bottom of page 802.

As was said above, counsel has not cited a case which supports his contention. In *Beamon* v. *Leake County,* 42 Miss. 237, the board was not possessed of the power to borrow money except under the special statute involved, and that statute was shown by their record to have been plainly violated. *Ames* v. *Williams,* 72 Miss. 760, is against appellants. It was there held that a decree appointing a guardian could not be collaterally attacked, though it be shown that the minors were not in the jurisdiction of the court at the time their guardian was appointed. *Campbell* v. *Brown,* 6 Howard, 106, and *Hemphill* v. *Hemphill,* 34 Miss. 68, are not in point. In these cases the court never had jurisdiction of the person. In *Theobald* v. *Deslonde,* 93 Miss. 712, the record affirmatively showed an actual failure to comply with the statute.

In *Leathers* v. *Howe Company,* 108 Miss. 1, the record shows a judgment in actual violation of the statute. The only case cited by appellants which, in my opinion, needs comment, is *Simpson County* v. *Buckley,* 85 Miss. 713; the following is too well settled to necessitate the citation of authorities. If a judgment recites contradictory matters and findings (as appears in the Buckley case) then such finding can be opened on collateral attack and it be ascertained which of the two findings is correct. Such was the condition in the Buckley case. The order

of the board recited that the proposition carried, but the record also showed on its face that less than two-thirds voted for removal. The syllabus correctly states what this case holds, and is as follows: "An order of the board of supervisors declaring the proposition for a removal of the county seat carried, from which no appeal was taken, may be collaterally attacked in a suit to restrain execution of the order where the record of the board shows that its action was in excess of its jurisdiction because the proposition was not carried by a two-thirds vote of all the qualified electors in the county as required by Constitution 1890, sec. 259, when the place to which the county seat is to be removed is a greater distance from the geographical center of the county than the place where it was already located." A reading of this case will show that the part of the same dwelt upon by counsel is mere *dictum*. But, aside from the above, the Buckley case, and the Hawkins case therein cited, both involved a constitutional prohibition, in which case of course, the court has jurisdiction, in a collateral attack, or otherwise, to prevent a violation of the constitution. In the case at bar, no constitutional question is so involved.

There are yet other reasons why appellants cannot succeed in this action. First, the record shows that after petitions were filed protesting against the issuance of bonds, an election, as provided for by said chapter 176, was legally ordered and held, which election resulted in favor of the bond issue. Remembering that the Constitution gives the board full jurisdiction over the subject-matter, it was not necessary that the original petitions be in proper form in order that the bonds issued by the authority of such election be valid.

Section 2 of chapter 176, Laws of 1914, read as follows: "   .   .   .   and if within that time twenty per centum of the qualified electors of such district   .   .   . shall petition against the issuance of the bonds, then the bonds shall not be issued unless authorized by a ma-

jority of the electors of such district . . . voting in an election to be ordered for that purpose, which election shall be held, etc."

So that regardless of the sufficiency of the original petitions. the bonds were legally issued if "authorized by a majority of the electors of such district voting in an election" which was ordered for that purpose, and there is no question as to the result of the election.

COOK, P. J., delivered the opinion of the court.

This appeal presents a case wherein the appellant asked the chancery court to review the proceedings of the board of supervisors of Yazoo county antecedent to the final order, authorizing the issuance and selling of bonds for the construction of public roads in supervisors district No. 1 of said county. All of the proceedings purported to have been under the provisions of chapter 176, Laws of 1914. The bill of complaint prays for an injunction against the issuance and sale of the bonds. The bill attacks all of the steps taken by the electors and all of the orders made by the board of supervisors in response to the original petition asking for the issuance of the bonds It seems that an appeal was taken by the appellants from the final orders of the board, upon bills of exceptions, but these appeals were abandoned and were voluntarily dismissed. This is a collateral attack upon the proceedings *in toto* and in detail. The board of supervisors, by an order entered on its minutes, announced that it would, on a given date, issue the bonds, unless a petition should be filed asking that an election be held in accordance with the statute. Whereupon a petition was filed against the bonds, purporting to contain twenty per centum of the qualified electors of the supervisor's district. The board thereupon ordered an election—the election was held, the commissioners of the élection canvassed the returns and certified that the election had resulted in favor of the issuance of the bonds; the board of

supervisors appointed road commissioners provided for by the statute, received their recommendation as to the amount of bonds to be issued, and entered an order for the amount recommended, which was one hundred and thirty-three thousand dollars. Thus far no one appealed from any of the orders of the board of supervisors.

Afterwards the road commissioners, after canvassing the assessed values of the property located in the district, reported to the board of supervisors that the maximum amount of bonded indebtedness permitted to the district by the statute was between one hundred and thirty-three thousand dollars and one hundred and thirty-two thousand dollars. Acting upon this suggestion, the board of supervisors reduced the bond issue to the latter sum. At the hearing evidence was introduced tending to support the complainants' theory that the original petition asked that supervisor's district No. 1 be permitted to "come under the provisions" of chapter 176, Laws of 1914. On the other hand, evidence to the contrary was offered, and the conflict was, by the chancellor, determined against appellant, and we see no reason to doubt the correctness of the chancellor's finding.

Again, it is the contention that the proposed bond issue did not receive the approval of a majority of the qualified electors voting at the election. This disputed question of fact was decided against appellant, and if we interpret the record correctly we are inclined to indorse the chancellor's solution. At any rate, we are totally unable to say that he was manifestly wrong.

The contention that the board of supervisors were not authorized to issue bonds for a less sum than the sum indorsed by the electorate is unsound. We think the board of supervisors, under its plenary powers and jurisdiction over roads, may order the issuance of any sum within the limts of the statutory amount, although the electors may ask for the maximum amount.

There is no merit in the point that one of the election commissioners appointed to hold the election was not a

freeholder. If the fact be assumed that the commissioner was not a freeholder, this would not invalidate the election, if the same was conducted fairly, and every qualified elector was given the opportunity to record his approval or disaproval of the proposed bond issue.

One other point is made, which, if true, would probably invalidate the bond issue. It was contended below that the bond issue authorized exceeded the statutory limit. We do not believe that this contention is supported by the evidence. This, like many other points, was a question of fact to be determined by the chancellor, and we do not see that he was wrong; it appears to us that he was right.

Taking the record as a whole, we believe that the road district was established, the election held, the bonds authorized, and the bonds issued strictly in accordance with the requirements of the statute.

If the vote of the people to tax themselves did not cure all of the alleged irregular precedent steps, it came very near doing so.

We have not deemed it necessary to discuss the many judicial pronouncements upon similar questions. Counsel on both sides have displayed unusual industry and discrimination in the presentation of their respective sides of this controversy; but believing, as we do, that the statute is the guide, we have chosen to confine ourselves to an examination of the issues presented—by the statutory yardstick. The law is simple and provides an easy method to pursue, and whether that method is actually pursued is merely a matter of proof.

*Affirmed.*

On Suggestion of Error.

Etheridge, J. In this case the appellants contend that the court erred in holding that the chancellor found against them on the facts, stating that the chancellor refused to give them a finding of the facts. While no special finding was put in the records, the judgment rendered had the effect of finding against the appellant on

the facts.   The order of the board of supervisors shows the jurisdictional facts on its fact, expressly reciting that twenty per cent. of the qualified electors had petitioned for the board to adopt the law.   This being true, its judgment has all the effect of a valid judgment of a court of general jurisdiction, and can only be questioned by a direct proceeding by appeal or certiorari.   The circuit court has supervisory jurisdiction of all inferior tribunals, and the chancery court has no such jurisdiction, and when the records show jurisdiction in the board to pass the order chancery cannot question the validity of the proceedings.   In the case of *Hinton* v. *Perry County,* 84 Miss. at page 546, 36 So. at page 567, this court said:

"Actions of the board not involving jurisdictional power are conclusively right in this collateral litigation. Its jurisdiction being, in this matter, limited, the minutes must show that the jurisdictional facts were found to exist.   This being done, there is no need ever to set forth the evidence in the judgment, and it is not controvertible, except on direct appeal."

In that case the board was exercising a statutory power, while in this case it was invested by the Constitution with full jurisdiction.   See, also, *Wolford* v. *Williams,* 110 Miss. 637, 70 So. 823, where this court held that an appeal from the board was the exclusive remedy.

There is no merit in the contention in the suggestion of error that the place where the board met was not in the chancery clerk's office.   The office in the courthouse, while not physically attached to or situated in the clerk's office, was nevertheless a part of the clerk's office.   The office where the clerk kept the records and did most of the clerk's work, while not physically attached to the courthouse, was on the courthouse square and within a few feet of the courthouse.   The clerk was required to attend the board and keep its minutes, and the office in which this work is done is a part of his office within the meaning of the statute.

*The suggestion is therefore overruled.*