# CASES ARGUED AND DETERMINED

## In The

# SUPREME COURT OF MISSISSIPPI

## AT THE

## OCTOBER TERM, 1921.

BOARD OF SUPERVISORS OF CLAIBORNE COUNTY *v.* CALLENDER ET AL.

[90 South. 722, No. 22278.]

1. HIGHWAYS. *Legislature may not under guise of regulations, divest board of supervisors of its jurisdiction and substitute other agencies for the board.*

Under section 170 of the Constitution of 1890, the board of supervisors is vested with full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and under this constitutional provision the legislature cannot, under the guise of regulations, divest the board of supervisors of its jurisdiction and substitute other agencies as the controlling factor in the exercise of this jurisdiction.

2. HIGHWAYS. *Under statute providing for separate districts, commissioners therein have supervision over construction, and board of supervisors cannot change their orders.*

Under chapter 176, Laws of 1914, as amended by chapter 277, Laws of 1920, providing for the organization of separate road districts, and the appointment of commissioners to have supervision over the construction of roads in such district, and prescribing the duties of such commissioners, although these commissioners recommend the the construction of a certain road, the board of supervisors may order a different road, and their discretion in the matter cannot be controlled by the will or judgment of the highway commission.

159

APPEAL from chancery court of Claiborne county.

HON. R. W. CUTRER, Chancellor.

Bill by W. S. Callender and others against the Board of Supervisors of Claiborne county, in which a preliminary injunction was issued, and on final hearing and motion to dissolve the injunction was overruled, and defendants appeal. Reversed, and bill dismissed.

*R. B. Anderson,* for appellant.

There are two questions involved in this case, and if either be answered adversely to appellees, the case must be reversed, if the view taken by appellant is not mistaken: 1st. Although the Road or Highway Commission recommends the building of a certain road (where proceedings are within the provisions of chapter 176, Laws 1914, and chapter 277, Laws of 1920), cannot the board of supervisors order the construction of a different road with the bond money, even though their order is not in accord with the judgment of the Highway Commission?

Second: Will the courts interfere, by injunction, with the exercise of discretion lodged with the board of supervisors, in the absence of fraud or plain abuse of such discretion?

We will discuss these questions in the order named.

The plan or scheme selected by Claiborne county for improving its public roads is that defined in chapter 176, Laws of 1914, and chapter 277, Laws of 1920. These acts were brought down from chapter 149, Laws of 1810. The keynote of this entire act is the authority of the board of supervisors over the construction of the public road. This was specially conferred by section 170 of the state constitution, which invests the board of supervisors with full jurisdiction over roads, ferries and bridges. At the 1916 session of the legislature, chapter 169 was passed, which attempted to bestow on the Highway Commission this full jurisdiction (section 4, chapter 169, Laws 1916), over roads, ferries and bridges, the idea being to divest the

supervisors of some of their powers. This act was prompt-ly held in valid and unconstitutional by this court. *State ex rel. Salter* v. *Board of Supervisors of Bolivar Co.,* 72 So. 700. In passing on chapter 169 of the Laws of 1916, the court said that the act was unconstitutional on account of its attempt to divest the board of supervisors of its jurisdiction over roads, ferries and bridges. The effect of this deci-sion was to leave chapter 176, Laws of 1914, which were sought to be amended by chapter 169, Laws of 1916 unimpaired and still in force.

It will be noted by reference to page 39 of the record that the bonds were issued after the passage of chapter 277, Laws of 1920, which is but a rescript of chapter 176, Laws 1914, except for the addition of section 23 of the Act of 1920, which section is in these words: "That the provisions of this chapter shall not apply to any road or roads except those selected by the commissioners—unless otherwise ordered by the board of supervisors." Now, what was the reason for inserting this section unless it was to cure any possible omission or defect in the chapter (176), Laws 1914, which might be unconstitutional also if interpreted to mean that the road commissioners alone could dictate what roads were to be worked with the bond moneys, and, furthermore, even if it was the purpose of chapter 176, Laws 1914, to leave entirely and solely to the discretion of the highway commission the naming of such roads as it deemed proper to be worked with the bond money, and even if it was perfectly legal to do this, the quoted section (23) of the Act of 1920, confers a like authority on the board of supervisors; therefore, we contend that the board of supervisors of this county, in the instant case, had the right to declare that they would work the road between Port Gibson and Rodney by deviating from the old route. So, the first branch of this discussion must be resolved in favor of appellants.

Second: As to the propriety of the remedy by injunction against public officers acting in discretionary matters. The courts are practically unanimous in holding that

they will not interfere by injunction in cases like this, unless there is fraud or a plain abuse of discretion, which amounts practically to fraud. In the first place, no fraud is charged in the bill, and therefore that feature must be eliminated. None was proved, of course, as the proof could not rise higher than the allegations of the bill.

*J. Mc C. Martin*, for appellee.

The scheme adopted by the legislature as set out in chapters 176 and 277, is simply a regulation of the manner in which the board shall exercise the power vested in it by the constitution. The regulations are simple, easily understood and should be strictly followed, especially as the interest of the tax-payers are thereby fully conserved. The moment a separate road district is established, in conformity with such acts, and bonds are ordered issued, three qualified electors and real estate owners in such road district are to be appointed, with the powers prescribed in the section five of said chapters above quoted. These in due time select and fix the road or roads which are to be constructed, and maintained, etc. They make report of such action to the board, which must order the report filed, and spread on its minutes, whether it rejects or confirms same. Besides the commissioners have the right, if necessary, to employ counsel; they must select an engineer, who is charged with duty of laying off the road making estimates of cost per mile, etc. In turn, this report to the commissioners by their engineer goes to the board, who must order it filed as a record of the clerk's office, and have it spread on its minutes, either confirming or rejecting it. Finally, after these legal requirements have been performed, and the commissioners reports have been adopted, the commissioners let out contract for the work, in accordance with the requirements of law, for letting out public contracts. All subject to the final ratification and approval of the board. Thus, the power of the board under sec-

tion 170, of the Constitution, has not been infringed; on the contrary a most reasonable and excellent regulation is made by the legislature, in strict conformity with said section 170. Other sections of the two above-named chapters, contained in Acts of 1914 and 1920, are not quoted, as the main scheme, regulating exercise of the constitutional power is above set out. The scheme is not only directory, but it regulates the conduct of the boards, as to application of the voted funds, and secures estimates of an engineer, along with a designation by the commissioners of the highway or highways, for the convenience of the travelling public which are to be dealt with, in using the public funds, all however, subject to the ratification and confirmation of the board. Besides, the contract or contracts for the work to be done after due and legal publication, etc., must be made by the commissioners, subject to confirmation, etc., of the board.

Wholly disregarding the provisions of chapter above quoted from the Acts of 1914 and 1920, the board of supervisors ordered and directed that a road beginning at what is known as the Poor House Fork, and running from thence to what is known as the Greenwood Plantation, and from the Greenwood Plantation, to the Maddox Ford, be laid off and constructed by the expenditure of the above-named eight thousand dollars. In doing so, they had neither had before them a petition of persons using such roads, praying that the same be laid off into a public road under the general law with proceedings such as the general law requires, nor did they have a report from the road commissioners along with a survey made by an engineer as to cost of same recommending that such road be constructed as a public highway nor did they leave to the road commissioners the right to deal with such highway in accordance with the powers conferred on them. Thus the board of supervisors acting without authority so to do directed the diversion of the eight thousand dollars, to a so-called new road, without authority of law.

Answer argument made by appellant. Appellant states two propositions, as conclusive of its contention, set out on pages 2 and 3 of its brief. The first, that notwithstanding the provisions of chapters 176 and 277, the board may and can legally ignore the action of the commissioners; second, that by writ of injunction the court interferes with the discretionary powers of the board.

In discussing the first proposition appellant contends that the language of section 170, of the Constitution confers unlimited jurisdiction on the board over roads, ferries and bridges. In doing so, it leaves out of consideration, the qualifying words, contained in said section reading: "To be exercised in accordance with such regulations as the legislature may prescribe." It is urged by appellees that these words put limitations on the authority given; and that when the legislature prescribes "regulations," these must be followed, unless such take the power entirely away and try to put it in other agencies as a controlling factor. The chapters under consideration with unusual clearness refers all acts done by the Commissioners and the engineer and the letting of contracts to the board of supervisors for its approval. If it may not be improper to use a plan prescribed by the legislature for the creation of commissioners to aid the supreme court in getting rid of a congested docket, it was permitted even in the teeth of a clear and unlimited provision of the state Constitution, to permit such commissioners to perpare opinions for adoption by supreme court; in doing so, no power of the supreme court was interfered with, but it was greatly aided in its work. The court simply adopted what the commissioner did. However, the qualifying words contained in section 170 are not found anywhere in any section conferring power on the supreme court. Going now to the case of *Salter* v. *Board of Supervisors of Bolivar County,* 72 So. 700, the point passed on by the court in holding chapter 169, of the Acts of 1915, unconstitutional was that it took directly away from the board of supervisors the powers conferred on it by section 170 and vested the same un-

qualifiedly in an officer created by that act giving him un-restrained jurisdiction over the matters named in section 170.  It did not touch chapter 176, and chapter 277 is a simple copy of chapter 176, incorporating a few verbal changes not affecting, in any way, the provision of chapter 176, which it was intended to amend.

Going now to the second proposition.  It will be noted from the facts hereinbefore recited, which facts control this case that there is not discretionary power of the board in the least interfered with.  If the board is constitutional-ly vested with power that it is bound to exercise in accord-ance with regulations prescribed by the legislature and it wilfully and wantonly ignores such regulations, can it be claimed for a moment that a discretionary power is being interfered with when a court of chancery by writ of in-junction brings it back to a proper regard of legal regula-tions?

Going now to section 20 of chapters 176 and 277, where-in appellant calls attention of the court to these words: "The cost of building all bridges shall come out of the gen-eral county fund  .  .  .  not out of the bonds fund at all." This means evidently as the district is a separate road dis-trict controlled by chapters 176 and 277, that should the commissioners and their engineer recommend a bridge, and should it be constructed, that the contract price must be paid out of the general fund.  However, the bridge is not the matter involved in this cause, it is the road that the board was seeking to arbitrarily construct independent of the two chapters.  It might well be thought by way of dis-cussion, the commissioners would find a bridge necessary and would report that such was necessary.  In this case they did and the board was trying to use or about to use the bond fund to get a road through from the Poor House Fork, by way of the Greenwood Plantation to the Maddox Fork.

Again appellant quotes from section 23 of the Act of 1920, as follows, that the provision of this chapter shall not apply to any road or roads except those selected by the

commissioners—unless otherwise ordered by the board of supervisors. The vice in appellant's contention is that no other kind of roads had been even mentioned by the commissioners, other than those shown in the report of Gage, Humphries and Allen above quoted. But, even if the board of supervisors had the power under a general law for the working of public roads by contract or by county prisoners or both, such law could only be put in operation by a vote of the board of supervisors in those counties where it may be desirable. See section 85, Constitution. It is needless, however, to discuss this phase because it is in no way involved in this cause.

The various authorities cited by counsel for appellant on pages 5 and 6 of its brief for the reason that the questions covered in the cases cited it is respectfully urged do not in any way arise in the determination of the matters involved growing out of the usurpation of the board of supervisors. Certainly the power resides in a court of equity to prevent an unauthorized use or abuse of authority, especially when that authority is being exercised in the very face of legal regulations.

COOK, J., delivered the opinion of the court.

Appellees exhibited their bill of complaint in the chancery court of Claiborne county against the board of supervisors of that county, seeking to restrain the board from using any part of the money derived from the sale of road bonds of supervisor's district No. 1 on a certain proposed road of the district. A preliminary injunction was issued, and on the final hearing a motion to dissolve the injunction was overruled, and from this decree the board of supervisors prosecuted this appeal.

The bill of complaint charged in substance that, the required number of qualified electors of the supervisor's district having petitioned for the organization of a road district under the provisions of chapter 176, Laws of 1914, an election was held to determine whether bonds should be is-

sued by the board of supervisors for the purpose of constructing certain named roads in such district; that at such election there was submitted the question of whether said bonds should be voted for the purpose of constructing, among other roads, the road leading from Port Gibson to Rodney and known as the old Rodney road; that it was understood and expressly requested that the proceeds of the bonds should be applied toward repairing and improving, among other roads, the road known as the Rodney road leading through or about the center of said district No. 1; that an issue of bonds to the amount of seventy-five thousand dollars was authorized for these purposes; that the board of supervisors passed an order authorizing the application of eight thousand dollars of the money arising from the sale of these bonds to the maintenance, repair, and construction of the said Rodney road, which leads through the center of the district; that since the bonds were issued it had become known that the board of supervisors was about to order the construction of a road leaving the old Rodney road about two miles from Port Gibson and extending along the northern side of the district until it connects with the old road about eight miles from the point of deviation; that the construction of the road as proposed would deprive a large proportion of the population of the district of the use and benefit of a good road; that a large majority of the people of the district constantly use the old route, and they will not be benefited by the proposed new route; that the diversion of the funds to the new route is contrary to the will, interest, and purpose of the voters who approved the issuance of the bonds; that this diversion of the bond money will work a great injury to a large majority of the taxpayers of the district; that only a small percentage of the population of the district will derive any benefit from the construction of the road along the new route; that under the provisions of said chapter 176, Laws of 1914, road commissioners were appointed for said district, and that such commissioners were charged with the performance of certain named duties;

that such commissioners had not discharged any of the duties necessary to be performed by them to authorize the construction of this proposed road; that the commissioners had not selected the proposed road and had not recommended the construction thereof; that the board of supervisors had wholly ignored its former order for the construction and improvement of the old Rodney road, and had ignored the said commissioners, and, without any report or recommendation from such commissioners, the board had undertaken to direct the construction of the said road on the north side of said district, without legal authority so to do and in violation of the provisions of said chapter 176.

The answer filed by the board of supervisors averred that it had ordered an election to determine whether said district No. 1 should be organized as a separate road district under the provisions of said chapter 176, Laws of 1914, and amendments thereto; that it was the purpose of said board to deviate from the route of the old Rodney road and to work and improve the new route indicated in the bill of complaint; that said intended change in said road will accommodate more people than the old route and will be far less expensive; that the board had not abandoned the old route; that said intended change in said road comprises only a link in same, and that it joins and becomes a part of the old road nine miles from Port Gibson. The answer denied that the proposed change was contrary to the wishes of a large majority of the people of the district; denied that it was the purpose of the voters of said district to have any certain route or plan adopted when they voted the bonds; denied that any particular roads were designated by the people voting at such election; denied that the intended route would injure or inconvenience any large number of persons living in said district; and averred that the change would benefit the people of the district and would afford them a cheaper, safer, and shorter route to the county seat.

For the purposes of this decision we deem it unnecessary to set out in detail the evidence offered at the trial. The

testimony was very conflicting as to the comparative cost
of the two routes, and also as to the number of people who
would be served by each route. It appeared that the road
commissioners had recommended that the sum of eight
thousand dollars be apportioned to the improvement of the
Rodney road, and that this recommendation was marked
approved by the president of the board, but it was never
approved by the board and entered on its minutes. There
also appears in the record the following agreement of coun-
sel:

"It is agreed between the solicitors herein that the road
commissioners and their engineer never made any reports
whatever to the board of supervisors adopting the road
on the north side in district 1 paralleling Bayou Pierre,
known as the new road; that no report was made recom-
mending it by the road commissioners; that the engineer
under their direction had made no survey, no estimate of
the cost per mile or otherwise, or reported it to the board;
and that no report whatever of the road commissioners was
adopted and spread upon the minutes of the board; and
that the board itself, of its own motion, laid off on the
north side of district 1 the so-called new road."

On the day of the trial of the cause in the court below
the commissioners filed with the board of supervisors a
report to the effect that they had inspected the proposed
change in the Rodney road, and that the new route was im-
practicable on account of the expense of constructing a
necessary embankment through a certain swamp on this
route; and on the same day the board of supervisors en-
tered on its minutes a formal order selecting the proposed
new route to be constructed and improved under the pro-
visions of chapter 176, Laws of 1914, and amendments
thereto, including chapter 277, Laws of 1920, and order-
ing that plans, specifications, and estimates should be
filed with the board according to law, and that the road
commissioners proceed to comply with the order.

This case presents for decision the sole question of
whether, under the provisions of chapter 176, Laws of

1914, as amended by chapter 277, Laws of 1920, the board of supervisors may order the construction of a road in the district which has not been selected and recommended by the highway commissioners.

Under section 170 of the Constitution, the board of supervisors is vested with full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, and under this constitutional provision the legislature cannot, under the guise of regulations, divest the board of supervisors of its jurisdiction and substitute other agencies as the controlling factor in the exercise of this jurisdiction.

Under section 5, chapter 176, Laws of 1914, which was re-enacted as section 5, chapter 277, Laws of 1920, it is made the duty of highway commissioners to have the management and supervision of roads constructed under the provisions of these chapters, subject, however, to the approval of the board of supervisors; it is made the duty of such commissioners, subject to the approval of the board of supervisors, to determine and fix what road or roads shall be constructed; it is made their duty to employ a competent engineer to lay out such road or roads as they shall determine upon, whose duty it shall be to make an estimate of the cost of constructing and maintaining such highway or highways for each separate mile covered by such survey, and report such survey and estimate to such commissioners for approval or rejection, and, when such survey and estimate is adopted by such commissioners, it is made their duty to report the same to the board of supervisors for approval or rejection; and finally it is provided that all acts of such commissioners are subject to ratification or rejection by the board of supervisors.

It will thus be noted that all acts of the highway commission are subject to the approval or rejection of the board of supervisors, and in case of disagreement between the commission and the board it follows as a necessary consequence that the board of supervisors, in the exercise of full jurisdiction over the roads, must be the final arbiter. If

any veto power should be conferred upon the highway commission, or if the board's power to act is made dependent upon the will of some other agency or factor, this in effect destroys the full jurisdiction over roads conferred by the Constitution on boards of supervisors, and under chapter 176, Laws of 1914, as amended by chapter 277, Laws of 1920, in providing regulations for the exercise of the board's jurisdiction over roads, ferries, and bridges, the legislature has not attempted to create any other agency with concurrent or equal power or jurisdiction with the board, or with power to control the discretion vested by the Constitution in the board of supervisors.  If there could have been any doubt as to the correctness of this construction of the provisions of chapter 176, Laws of 1914, all doubt as to the legislative purpose and intent was removed by amendments thereof as enacted in chapter 277, Laws of 1920, which expressly provides in section 23 thereof that—"The provisions of this chapter shall not apply to any road or roads except those selected by the commissioners, *unless otherwise ordered by the board of supervisors.*"  (Italic ours.)

We conclude, therefore, that under the provisions of chapter 176, Laws of 1914, as amended by chapter 277, Laws of 1920, although the highway commission recommends the building of a certain road, the board of supervisors may order the construction of a different road, and that their discretion in the matter cannot be controlled by the will or discretion of the highway commission.  In the case now before us, the board having ordered the construction of a particular road, it is the duty of the commissioners to proceed to have surveys and estimates of the proposed road made, and to proceed with the construction of the particular road in exact accordance with the provisions of the chapters under which they are operating.

The decree of the court below is therefore reversed, the injunction dissolved, and bill dismissed.

*Reversed and bill dismissed.*