## Board of Sup'rs of Quitman County *v.* Self.

(Division B. Jan. 20, 1930.   Suggestion of Error Overruled February 17, 1930.)

[125 So. 828.   No. 28289.]

**W. E. Gore**, **T. N. Gore** and **A. A. Pogue**, all of Marks, for appellant.

**Lowrey & Lamb**, of Marks, for appellee.

Argued orally by **W. E. Gore**, for appellant, and by **Lomax B. Lamb**, for appellee.

**Ethridge, P. J.**, delivered the opinion of the court.

The appellee, Self, was complainant in the court below, and filed a bill in the chancery court seeking an injunction against the board of supervisors from paying out funds derived from a bond issue of road district No. 3 east of Coldwater river in Quitman county, Miss. He alleged that, upon a petition of more than twenty per cent of the qualified electors of such road district, the board of supervisors had filed with it a petition for the issuance of thirty-five thousand dollars of bonds for the road district, under the provisions of chapter 277, Laws of 1920, Hemingway's Supplement of 1921, sections 7158 to 7178c, inclusive. He further alleged that under the petition filed before the board the roads to be improved out of the bond issue were designated. The petition, made an exhibit to the bill and petitioning for the road to be built, described the road desired to be constructed as follows:

"Beginning where the line between Quitman and Panola counties is intersected by the road known as the Marks and Batesville public road and which said intersection is in section 23, township twenty-eight (28), range one (1) east, in Quitman county, Mississippi, and running thence westwardly through sections twenty-three (23), twenty-two (22), twenty-one (21), twenty (20), and nineteen (19), of township twenty-eight (28), range one (1) east, and section twenty-four (24), township

twenty-eight (28), range one (1) west, in Quitman county, to where the said public road turns southwardly west of main dwelling house on Riverview plantation of P. M. B. Self and which said work of construction shall begin at the intersection of said Marks and Batesville public road with said line between Panola and Quitman counties and proceed westwardly to where said road turns southwardly west of main dwelling house on the Riverview plantation of P. M. B. Self and thence southwardly until said sum has been expended.

"Your petitioner further prays that the sum of ten thousand dollars for the proceeds of said bond issue be used in the construction and maintenance of the public road in said district described as:

"Beginning where the public road running from Marks to what is known at McLean Neal Place crosses south line of said road district and running thence north eastwardly to town of Marks in said Quitman county, and which said work of construction shall begin at south line of said road district and proceed northwardly towards town of Marks, in said Quitman county, Mississippi."

The petition also prayed that the sum of twenty-five thousand dollars of the bond issue be used for the construction of the first road described, and ten thousand dollars of it be used for the construction of the second road described.

On this petition the board of supervisors entered an order adjudging that the petition contains names of more than twenty per cent of the qualified electors of the territory comprising the proposed district, and that the district came under the provisions of sections 7158 to 7178c of Hemingway's 1921 supplement, chapter 277, Laws of 1920, and amendments thereto; that the proposed bond issue, added to the amount of all outstanding bonds heretofore issued against the territory comprising said district, does not exceed fifteen per cent of the assessed value of all the taxable property within said dis-

trict; and declared it to be the purpose of the board to issue the bonds of the district in the said sum, and ordered an election to be held in the district at a named place on the 3d day of June, 1927, at which election the proposal of the board to issue said bonds in the said sum should be submitted to the qualified electors of the district, and directed the election commissioners to give notice as required by law under the provisions of the registration, election chapter, Code of 1906; and that the ticket contain provision, "For the issuance of bonds," and provision, "Against the issuance of bonds," with appropriate places to mark the ballot in conformity to the statute. The order of the board under the petition did not specify what road should be built from the proceeds so issued. The election commissioners of the county published a notice to the qualified electors of the district of the county which reads as follows:

"Notice of Election.

"To the Qualified Electors of Road District Number Three, East of Coldwater River, in Quitman County, Mississippi:

"Notice is hereby given that on May 3, 1927, the board of supervisors of Quitman county, Mississippi, by an order entered in Minute Book 9, page 519, of the minutes of said board, ordered an election to be held on Friday June 3, 1927 at the residence of A. H. Nobles in said district, submitting the proposal of said board of supervisors to issue the bonds of said road district in the sum of thirty-five thousand ($35,000) dollars, the proceeds of which shall be used in the construction and maintenance of public roads in said district.

"You will therefore please take notice of said election which will be held at said place and said time and govern yourself accordingly."

This notice was published as required by law in the newspaper of the county for the time required, and proof of publication was made. The election commissioners,

however, in prescribing the ballot and in printing the tickets for the election, followed the petition above set out specifying the roads to be constructed, and specifying the law under which the election was to be held, and the amount to be devoted to each of the said roads. This ticket was published by the election commissioners without consulting with the board of supervisors or its attorney, one of the election commissioners stating that he prepared the ticket and followed the petition in doing so, and that he was acting on his own initiative in so doing. The result of the election was fifteen votes for the bond issue and none against it. Prior to the filing of this petition, there had been a former petition filed for the same district for the same amount of bonds without any designation in the petition as to where the funds would be used or upon what roads they would be expended, and this petition had been acted upon, an election ordered in conformity to the law, and at that election the proposal had been defeated by a vote of two to one, or twelve to six. This proceeding had been only a few weeks prior to the institution of the present proceeding for the present bond issue.

The chancery judge granted the injunction as prayed, and the county answered the bill, and the cause was tried before the chancellor upon bill, answer, and proof, at which hearing the chancellor made the injunction perpetual. The bill of injunction, in addition to the matters stated above, set out that the board did not comply with the law in letting the contract, in that it did not have appropriate plans and specifications showing the cost of each mile of the proposed road.

It appears that the main question discussed in the court below and here was whether the board must conform to the roads specified in the petition and on the election ticket. It was repeatedly stated in the trial below that the complainant did not object to the board paying for the road out of any funds, other than the bond issue, that it might have; and that the desire of the complainant was to prevent the expenditure of any money

upon any roads other than the ones specified in the petition and election. It is manifest from the record that the chancellor's decision was reached upon the proposition that the board could not spend the money upon any other road than that prayed for in the petition and that set forth in the ticket voted upon by the electors. The bill alleged that the board was undertaking and had let a contract for the construction of a different road, or for the improvement of a different road, that is, one beginning in section 36 and running through sections 25 and into 24 and intersecting the road from Batesville to Marks in section 24, whereas the road in the petition begins at a point near the east end of the bridge and runs north through sections 25 and 24, and thence east through sections 19, 20, 21, etc.

The defendant, the county, in the court below sought to prove that, when the petition was presented by the petitioners for the proposed bond issue, the board expressly refused to grant the petition for the road designated therein, and refused to enter upon the minutes an order, prepared by the attorney for the petitioners, adopting such road for improvement out of the bond issue. This the court refused to permit the county to do, holding that it was immaterial what they failed to enter upon the minutes, that the matter was determined by the petition and the orders as entered.

This brings us to a consideration of the provisions of chapter 277, Laws of 1920 (sections 7158 to 7178c inclusive, of Hemingway's Supplement of 1921). The first section of this act is one giving power to the supervisors to create road districts; and section 2 provides:

"That upon presentation to the board of supervisors of any county of a petition containing the names of twenty per cent of the qualified electors of any one or more supervisors districts of any territory proposed to be created and organized into a road district of such county asking that such district or districts or territory be permitted to come under the provisions of this act

it shall be the duty of such board of supervisors to order an election to be held on a day to be fixed by them submitting the proposal to issue bonds of such district or districts to the qualified electors of such district or districts and the election commissioners of such county, shall give notice of such election to issue such bonds by publication in a newspaper published in the county, having a general circulation therein, and if none be therein published, then in some newspaper having a general circulation therein," etc.

This section does not confer upon the petitioners any expressed authority to designate any particular road to be improved or constructed, but does provide for the petitioners to petition to come under the provisions of the law. In other words, the proposal to be presented to the board under the requirements of this section is that it petitions to come under the operation of this chapter and to have a bond issue for the improvement of the roads of the district. The section contemplates, when the petition contains these jurisdictional facts, that the board shall order the election and submit to the people whether or not the bond issue shall be carried out or the bonds used for such purpose.

By section 3 of the act, among other things, it is provided that, if the bond issue carried at the election by a majority of the voters participating therein, then it shall be the duty of the board to issue the bonds of such supervisor's district or districts, in any amount not to exceed fifteen per cent of the assessed valuation of the taxable property of the district, which amount within this limit is to be fixed by the commissioners thereafter provided in later sections of the act, with the approval, or subject to the approval, of the board of supervisors, and that the bonds may be sold either as a whole or in installments as needed "for the construction of such highway or highways, in the discretion of such commissioners and the board of supervisors."

Section 4 of the act provides for the form and amounts of bonds, etc. Section 5 of the act provides:

"That it shall be the duty of the board of supervisors in case such election shall result in favor of the issuance of bonds, at their next regular meeting, or any subsequent meeting, appoint three commissioners, who shall be qualified electors of such district or districts and real estate owners therein, who shall hold office for a term of four years from the time of their appointment and until their successors are appointed by the board of supervisors, whose duty it shall be to have the management and supervision of the construction and maintenance of the roads built under the provisions of this act, subject to the approval of the board of supervisors; and for their services shall be paid their actual expenses, not exceeding one hundred dollars each per annum; such commissioners may employ legal counsel if necessary, and pay a reasonable compensation for the same; and it shall be the duty of such commissioners, subject to the approval of the board of supervisors, to determine and fix what road or roads shall be constructed or constructed and maintained or maintained in such district or districts out of the proceeds of the sale of such bonds and the levy of such taxes; and it shall be their duty to let all contracts for the construction, or for the construction and maintenance or for the maintenance of such roads in the manner now provided by law for the letting of contracts for public work by the board of supervisors; and it shall be their duty to employ a competent engineer to survey and lay out such road or roads in such district, or districts, as they shall determine upon, whose duty it shall be to make an estimate of the cost of constructing and maintaining such highway or highways for each separate mile covered by such survey, and report such survey and estimate to said commissioners before contracts are let for the construction or for the construction and maintenance of such highway or highways; which survey and estimate said commissioners shall have the pow-

er to adopt or reject and in the latter event to have another made; and when adopted, it shall be their duty to report the same to the board of supervisors, whose duty it shall be to order the clerk of said board to file the same among the records of the office, and spread the same on the minutes of the board and make an order adopting such survey, and estimate so reported and adopted by such commissioners; all of which acts of said commissioners to be subject to the ratification or rejection by the board of supervisors.''

In section 6 of the act it is provided that the public highway so surveyed and adopted by the said commissioners shall be constructed and maintained out of the proceeds of such bonds, the proceeds of such bonds to be used alone in their construction and maintenance, and the board of supervisors shall levy an annual tax, etc.

It is clear from the provisions of these sections of the act that the roads to be selected for improvement out of the bond issue were for the determination of the road commissioners and the board of supervisors. The act nowhere, in terms or by any fair interpretation, confers upon the petitioners any power to designate the roads to be improved, or in any other manner to control the proceeds of the bond issue or the construction of the roads.

Under section 170 of the state Constitution (Mississippi Constitutions, p. 310), each county is divided into five districts, a resident freeholder of each district is selected in the manner prescribed by law, and the five so chosen shall constitute the board of supervisors of the county, a majority of whom may transact business. The board of supervisors shall have full jurisdiction over roads, ferries, and bridges, to be exercised in accordance with such regulations as the legislature may prescribe, etc. Under this section of the Constitution the full jurisdiction of the roads and ferries is vested in the board of supervisors, and, while the board may be subjected, in the exercise of its jurisdiction, to reasonable regulations by the legislature, it cannot be deprived entirely

of its power and discretion. Board of Sup'rs v. Callender, 128 Miss. 159, 90 So. 722. The legislature recognized this fact in the enactment of this statute, and provided in terms that the road commissioners appointed under the act and given power to select the roads must do so subject to the approval of the board of supervisors. In other words, the legislature provides for the appointment of the road commissioners who are resident and landowners of the district, and that they bring their judgment and discretion to bear upon the subject of road improvement and what road will best serve the general public interest of the district, and report the same to the board with their views for the board to approve or reject. It was manifestly the purpose of the legislature to make the road commissioners an advisory body to the board of supervisors, and with such advice for the board to select the road to be improved; therefore, the contents of the petition designating roads were merely advisory, or an expression of the wish of the petitioners. It was not required by the act, and had no binding legal efficacy in compelling the board to carry out the wish of the petitioners. Of course, as a general proposition, the board would be open to reason, and would be inclined to respect the wish of the petitioners, but, at the same time, the board must act in conformity to the requirement of the statute.

When the commissioners were appointed by the board of supervisors, they designated the roads to be improved, and recommended the same to the board of supervisors, who adopted the roads so recommended by the commissioners for improvement out of the bond issue. The board, by the order entered herein on the petition, did not commit itself to improve the roads designated in the petition, they just followed the provisions of the law, and declared their purpose to issue bonds in the required amounts under the act, and proceeded in conformity to the act to appoint the commissioners, and the commissioners proceeded in accordance with section 5 to designate the roads and have survey and estimate

made of the cost of construction, dividing the roads into lengths of one-half miles, instead of one mile, with engineers' estimates of the cost of improvement. The election commissioners had no authority, under the law, to put in the ticket the provision of the petition. What they are required to give is the proposal of the board to issue the bonds under the statute, and the designation in the ballot of the roads to be improved is outside the authority of the act, and is an encroachment upon the authority of the board of supervisors, and had no legal effect to bind the board of supervisors or the commissioners to follow the designations embraced upon the ticket.

When notice is given, as it was given by the election commissioners, referring to the order of the board of supervisors and the book and page of the minutes where such order was found, this constitutes notice to the electors where they could inform themselves of exactly what the proposition to be voted upon was. The election commissioners have no jurisdiction to do anything except to order the election in conformity with the order of the board of supervisors, and their placing of extraneous and surplus matters in the ticket can have no binding effect contrary to the provisions of the statute. When the road commissioners were appointed after the election, it was their duty to exercise the functions and powers of their office or duties according to the requirements of the statute which imposed upon them the exercise of a sound, independent, personal judgment upon the question as to what road should be improved. They were under no obligation to follow the petition or the stipulations contained in the ticket not authorized to be placed there. The law had imposed specific duties upon them; this they had no right or power to delegate to others. The board and the commissioners are vested by law with the public discretion not to be capriciously exercised and not to be dictated by outside persons, and, when they bring this judgment into operation upon the questions presented to them by the statute and the order of

the board in conformity to statutory directions, the court has no power to substitute for this discretion the wishes of the petitioners or the electors, where the statute has given no power to such electors to control the matter, but must follow the law and act in its judgment according to the requirements of the law.

Whatever may be the truth of the desirability of the one road as opposed to the other, the court below refused to entertain that question, holding that that was for the board of supervisors to determine; still, the court below reached the conclusion that the board in some way was bound to follow the directions of the petitioners and the stipulations in the ticket. We think the court was manifestly wrong in so holding. It was correct in holding that the discretion as to which was the desirable road to be improved was for the board and the road commissioners, but it was wrong in holding that the board, in ordering the election and issuing the bonds, had in any way pledged itself or the board to improve the roads-specified in the petition. Therefore the court below was wrong in making perpetual the injunction against the board of supervisors in so far as it confined them to the routes prescribed by the petition and ballots, and in so far as it prohibited them from adopting the roads, which in their own judgments would best serve the public interests by being constructed and improved. Johnson v. Board of Sup'rs of Yazoo County, 113 Miss. 435, 74 So. 321.

We think this question is the dominating question in the case. There is some question raised in the bill, and in the trial of the case, as to whether the contract had been let in the manner prescribed by law. It is manifest from the whole record that the chancellor did not decide this question, and that he was not influenced by it in making the injunction perpetual. The county complied with the act in appointing an engineer and commissioners provided by section 5 and section 3, and this engineer made up an estimate of the cost by one-half

mile lengths. This estimate was approved by the road commissioners and the board of supervisors. There was in the office of the clerk of the board of supervisors a lengthy instrument called "Instructions to the Bidder," which prescribed in great detail how the roads were to be constructed. This had been adopted prior to the presentation of the petition, and has been followed since 1920 by the county authorities and contractors in working public highways and in bidding thereon. It was said in the trial of the case that this was insufficient, because the specification required that they should point out the particular places and particular amounts and character of work to be done prior to letting the contract, so that all bidders would have full and fair information of exactly what they were to do, etc.

As we think the chancellor did not bring his mind to bear upon this proposition, but decided the case upon the main question herein decided, and as we think that we should have the question, if deemed important, better discussed and developed than it has been by the record and by the briefs, we leave this feature of the case open for further consideration by the chancellor on remand of the cause. It appears to us that the chancellor, in ruling out much of the evidence offered, based his opinion upon the fact that the board had undertaken to work the wrong road, and the board's order with reference thereto was void.

The judgment below will be reversed, and the injunction dissolved in so far as it restrains the board from selecting the road to be improved and expending the money and contracting thereon, and judgment upon this feature will be entered here recognizing the board's legal discretion and right to select the road; but the question as to whether there were proper plans and specifications on file, and whether they were sufficiently conformed to by the commissioners and board in letting contracts, and by the contractors in performing the work, we leave open to the decision of the chancellor on remand.

Reversed and remanded.